IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELBA ALICIA ORDONEZ VELAZQUEZ, and LUIS ALBERTO ARRIAGA GUZMAN, Husband and Wife;<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | 8:18-CV-406<br><br>**MEMORANDUM AND ORDER** |

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss and Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b) (6), and 56. Filing 48. Plaintiffs, Luis Alberto Arriaga Guzman ("Arriaga") and Elba Alicia Ordonez Velazquez ("Ordonez"), are husband and wife, and filed this action alleging negligent medical treatment and loss of consortium. Plaintiffs allege that doctors employed by OneWorld Community Health Centers, Inc. ("OneWorld") failed to properly diagnose, treat, refer, or care for Ordonez related to her abdominal pain and subsequent bowel obstruction. *See* Filing 47. After Plaintiffs originally filed this action and named OneWorld and various physicians as defendants, the parties filed a Joint Stipulation for Substitution replacing OneWorld and the various physicians with the United States of America because OneWorld is deemed an employee of the Public Health Service. *See* Filing 12; Filing 50 at 5.

The United States moves to dismiss Plaintiffs' claims, arguing they are barred by the statute of limitations because Plaintiffs failed to properly and timely present their administrative claims

1

to the Department of Health and Human Services ("DHHS"). As discussed below, the Court will dismiss this action because finds the Court lacks subject-matter jurisdiction over Plaintiffs' claims.

## II. BACKGROUND[1]

### A. Ordonez's Medical Treatment

Ordonez went to OneWorld, a medical facility located in Omaha, Nebraska, on October 19, 2015, complaining of abdominal pain. Filing 47 at 2. She was seen and discharged with instructions to contact OneWorld if the pain did not resolve. Filing 47 at 2. On November 6, 2015, Ordonez returned to OneWorld because of continued abdominal discomfort; she was discharged with a referral for acupuncture and a prescription for oxycodone-acetaminophen. Filing 47 at 2-3. The next day, November 7, Ordonez was taken by rescue squad from her home to Methodist Hospital in Omaha, Nebraska, where she was diagnosed with a bowel obstruction and underwent an emergency laparotomy surgery with bowel resection. Filing 47 at 3. Ordonez later returned to OneWorld on January 12, 2016, for follow-up care regarding her "post emergency laparotomy with bowel obstruction and necrosis." Filing 47 at 3. She was referred to pain management for her "chronic abdominal pain." Filing 47 at 3. Ordonez returned to OneWorld on June 20, 2017, because of the same chronic abdominal pain. Filing 47 at 3. She was again prescribed opioids for her abdominal pain. Filing 47 at 3.

### B. Procedural History

*1. Plaintiffs' Original Lawsuit*

On November 2, 2017, Plaintiffs filed suit against OneWorld and various treating physicians in the District Court of Douglas County, Nebraska. *See* No. 18-CV-45 at Filing 1-1.

---

[1] The Court ultimately treats the United States' motion as a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Though undisputed facts are not necessary for the Court's analysis, the Court notes that the parties agree upon the relevant facts contained herein, namely the timeline of events.

Plaintiffs alleged OneWorld and its employees provided negligent medical treatment to Ordonez on October 19, 2015, and November 6, 2015. No. 18-CV-45 at Filing 1-1 at 5. Plaintiffs alleged this negligent treatment caused Ordonez to undergo "lifesaving repair surgery" due to an intestinal blockage, and the ensuing harms to Ordonez caused Arriaga to suffer loss of consortium. No. 18-CV-45 at Filing 1-1 at 5. The United States then intervened and removed the case to this Court because, under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 201 et seq., OneWorld is deemed a Public Health Service employee and is eligible for the medical malpractice protections of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. *See* No. 18-CV-45 at Filing 1 at 2-3; Filing 1-2 at 1; Filing 1-3 at 2. Because the Attorney General, or his designee, certified that OneWorld and its employees were acting within the scope of their employment when treating Ordonez, *see* No. 18-CV-45 at Filing 1-2 at 1, this Court was and is the proper venue. *See* 42 U.S.C. § 233(c) (requiring removal to "the district court of the United States of the district and division embracing the place wherein [the action is pending]" upon certification that defendants were acting within the scope of their employment).

On February 12, 2018, the United States filed a Notice of Substitution. No. 18-CV-45 at Filing 4. In its motion, the United States requested substitution of itself for all defendants because OneWorld was protected by the provisions of the FTCA, and a suit brought pursuant to the FTCA may only be brought against the United States. *See* No. 18-CV-45 at Filing 4 (citing 28 U.S.C. § 1346(b), 2672). The Court allowed the substitution. No. 18-CV-45 at Filing 7.

On February 15, 2018, the United States moved to dismiss without prejudice for failure to exhaust administrative remedies under the FTCA. No. 18-CV-45 at Filing 8. The Court granted the motion and dismissed the action for lack of subject-matter jurisdiction because "[P]laintiffs did

3

not exhaust their administrative remedies." *Velazquez v. Doe Corp.*, No. 8:18CV45, 2018 WL 1472540, at *4 (D. Neb. Mar. 26, 2018).

    2. *Plaintiffs' First Set of Administrative Claims*

Prior to the March 26, 2018, dismissal of their original lawsuit, Plaintiffs submitted SF-95s, the forms used to lodge FTCA claims with the appropriate federal agencies. Filing 35-1. DHHS received the SF-95s on March 9, 2018. Filing 35-1. Arriaga's form claimed $500,000 in damages, indicated that the "date and day of accident" was November 17, 2015,[2] and stated the basis of his claim in relevant part as follows:

> As a direct and proximate result of the negligence of the employees of One World Community Health, the claimants wife Elba [Ordonez] Velazquez suffered undiagnosed intestinal blockage and was forced to undergo life-saving repair surgery, She continues to suffer from extensive and severe abdominal disfigurement and her husband continues to suffer from the loss of marital consortium.

Filing 35-2 at 1.

Ordonez's form also listed the "date and day of accident" as November 17, 2015, and, as the basis of her claim, she stated that "[a]s a direct and proximate result of the negligence of the employees of One World Community Health, the claimant Elba Ordonez suffered undiagnosed intestinal blockage and was forced to undergo life-saving repair surgery, She continues to suffer from extensive and severe abdominal disfigurement." Filing 35-2 at 3. Ordonez claimed total damages of $1,000,000. Filing 35-2 at 3.

Along with their SF-95s, Plaintiffs submitted to DHHS 1,376 pages of Ordonez's medical records, a copy of her state-court complaint, billing statements, and a contract for legal services. Filing 52-1 at 1-2. The state-court complaint alleged negligent medical treatment on October 19,

---

[2] The record is unclear about Ordonez's surgery date. The Amended Complaint alleges November 7, 2015 while her administrative form discusses November 17, 2015. *Compare* Filing 47 at 3, *with* Filing 35-2 at 1, and Filing 35-2 at 3.

4

2015, and November 6, 2015, but did not specify any continued visits or any ongoing negligent prescription of opioids. *See* Filing 35-2 at 9-12. The contract for legal services showed Ordonez employed her attorney to represent her for her claim "arising out of medical malpractice on or about the 7 day of November, 2015." Filing 35-2 at 5. However, the 1,376 pages of medical records and billing statements contained notes and bills from Ordonez's treatment at OneWorld on January 12, 2016, and June 20, 2017. Filing 52-1 at 2.

During the time these administrative claims were pending, Plaintiffs did not seek to amend them. Filing 35-1 at 2. On July 16, 2018, DHHS denied Plaintiffs' administrative claims, and Plaintiffs' attorney received a DHHS denial letter on July 25, 2018. Filing 35-1 at 2. Plaintiffs did not seek reconsideration of their denied claims within six months of denial or prior to filing a new lawsuit. Filing 35-1 at 2.

3. *Plaintiffs' Present Lawsuit and Additional SF-95s*

Plaintiffs filed the present lawsuit, a duplicate of the prior suit, on August 24, 2018, alleging negligent medical treatment on October 19, 2015, and November 6, 2015, and a related claim of loss of consortium. *See* Filing 1. After "it became apparent to Plaintiffs that they ha[d] an additional cause of action relating to continuing negligent medical treatment," Plaintiffs sent a second set of SF-95s to DHHS[3] on April 5, 2019, specifically alleging continuing negligent medical treatment.[4] Filing 34-3 at 1-2; Filing 34-4 at 2-3 (describing medical negligence from October 19, 2015, through June 20, 2017, as the basis of Plaintiffs' claims and including new allegations of opiate

---

[3] The United States argues this second set of SF-95s is an attempt to amend the previously denied SF-95s, but Plaintiffs disagree that their discovery of an additional cause of action and submission of additional SF-95s, which update the basis of their claims to include ongoing treatment and opiate addiction, are an amendment.

[4] Plaintiffs sought and received a stay from this Court while they pursued their second set of administrative claims. *See* Filing 34; Filing 39.

addiction). On the new forms, Arriaga and Ordonez updated their damages claimed to $1,750,000 each. Filing 34-4 at 2-3.

Nothing in the record shows that Plaintiffs received a denial or response to their second set of administrative claims from DHHS, and Plaintiffs filed an Amended Complaint on October 30, 2019, that included new allegations of continued negligent medical treatment and opiate prescription. *See* Filing 47. On November 26, 2019, the United States filed the present Motion to Dismiss and Motion for Summary Judgment. Filing 48. The Court addresses this motion below.

### III. STANDARD OF REVIEW

"Rule 12(b)(1) . . . governs challenges to subject matter jurisdiction." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1),[5] the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "In a facial challenge to jurisdiction, the court presumes all of the factual allegations concerning jurisdiction to be true and will grant the motion only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Young Am. Corp. v. Affiliated Comput. Servs. (ACS), Inc.*, 424 F.3d 840, 843–44 (8th Cir. 2005) (citing *Titus*, 4 F.3d at 593). In a factual challenge to jurisdiction, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 730.

When the complaint is factually challenged, "[t]he plaintiff bears 'the burden of proving the existence of subject matter jurisdiction,' and [the court] may look at materials 'outside the pleadings'" when determining whether it has jurisdiction. *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (quoting *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en

---

[5] A motion to dismiss for lack of subject-matter jurisdiction may be asserted at any time. Fed. R. Civ. P. 12(h)(3); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S. Ct. 1197, 179 L. Ed. 2d 159 (2011).

banc)). "[N]o presumptive truthfulness attaches to [the plaintiff's] allegations, and the existence of disputed material facts will not preclude [the court] from evaluating . . . the merits of jurisdictional claims." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 861 (8th Cir. 2013) (citing *Osborn*, 918 F.2d at 730). "It is the court's duty to 'decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue.'" *Buckler*, 919 F.3d at 1044 (quoting *Osborn*, 918 F.2d 724).

## IV. DISCUSSION

The United States argues this Court lacks subject-matter jurisdiction over Plaintiffs' claims because they failed to exhaust their administrative claims. *See generally* Filing 50; Filing 53. Specifically, the United States argues Plaintiffs failed to timely file their tort claims and properly present those claims. *See id.* In response, Plaintiffs argue (1) they timely filed their claims because the continuing medical treatment doctrine ("CMTD") applies and delayed accrual of the statute of limitations, and (2) they properly presented their claims. *See generally* Filing 51. The United States argues the CMTD does not apply to the facts of this case. *See generally* Filing 50; Filing 53.

As discussed below, Plaintiffs did not properly present facts, claims, or legal theories showing continuing treatment or negligence in their first set of administrative claims, and therefore their first set of administrative claims was not timely filed. Further, Plaintiffs' second set of administrative claims were improper amendments to their prior time-barred claims.[6] Accordingly, the Court will dismiss this action with prejudice because it lacks subject-matter jurisdiction over the claims.

---

[6] Plaintiffs apparently believed the CMTD applied and rendered their first set of administrative claims timely, therefore Plaintiffs placed all of their tort-claim eggs in the CMTD basket and declined to address whether or not their second set of SF-95s were an attempt to amend their original claims. *See* Filing 51 at 5 ("Thus, in light of the [CMTD], the issue of whether Plaintiffs' second SF-95 forms were an attempt to amend Plaintiffs' original SF-95s is moot."); *see also* Filing 51 at 14-15.

## A. Legal Framework for FTCA

"[S]overeign immunity shields the Federal Government and its agencies from suit." *Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2011) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994)). Under the FSHCAA, "the United States has made itself liable for the medical malpractice of federally supported community health centers, their officers, [and] employees." *Carrizales v. United States*, No. 8:14CV3104, 2014 WL 4471602, at *1 (D. Neb. Sept. 10, 2014). However, by passing the FTCA, Congress waived the United States' sovereign immunity by permitting persons injured by federal-employee tortfeasors to sue the United States for damages in federal district court. *See Mader*, 654 F.3d at 797 (citing *Molzof v. United States*, 502 U.S. 301, 304, 112 S. Ct. 711, 116 L. Ed. 2d 731 (1992)). The FTCA "provides that federal district courts have 'exclusive jurisdiction' over claims against the United States for money damages for 'personal injury or death caused by the negligent or wrongful act or omission.'" *Id.* (quoting 28 U.S.C. § 1346(b)(1)).

*1. Presentment*

Congress later amended the FTCA by enacting 28 U.S.C. § 2675(a), which provides that "[a]n [FTCA] action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." If the agency fails "to make final disposition of a claim within six months after it is filed," a claimant has the option to deem such failure a final denial. *Id.*

> As is relevant to § 2675, 28 C.F.R. § 14.2(a) provides the following:
>
> [A] claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed [SF-95] . . . accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.

"Conformity with § 2675(a)" and its presentment and denial requirements are "jurisdictional," and a district court must dismiss for lack of subject-matter jurisdiction absent such conformity. *Mader*, 654 F.3d at 808.

The purpose of presentment is to "provide[] federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit." *Mader*, 654 F.3d at 801. Therefore, "[a] litigant may not base any part of his tort action against the United States on claims that were not first presented to the proper administrative agency." *McCoy v. United States*, 264 F.3d 792, 795 (8th Cir. 2001) (citing *Provancial v. United States*, 454 F.2d 72, 74–75 (8th Cir. 1972)).

2. Timing

There are also timing requirements for presentment of a tort claim. A tort claim "against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." *McCoy*, 264 F.3d at 794 (quoting *Wehrman v. United States*, 830 F.2d 1480, 1482–83 (8th Cir. 1987)). "[C]ompliance with the two-year limitations period is a jurisdictional prerequisite." *Id.* "When a claim accrues is a question of federal law." *Wehrman, 830 F.2d at 1482–83* (citing *Snyder v. United States*, 717 F.2d 1193, 1195 (8th Cir. 1983)).

Generally, a tort claim accrues "at the time of the plaintiff's injury." *Id.* But, tort claims for medical malpractice accrue at the time the plaintiff "actually knew, or in the exercise of reasonable diligence should have known, the cause and existence of his injury." *Id.* (citing *Snyder*, 717 F.2d at 1195); *see also McCoy*, 264 F.3d at 794 ("[A]n FTCA claim for medical malpractice accrues when a plaintiff becomes aware of his injury and its probable cause." (citing *United States v. Kubrick*, 444 U.S. 111, 122, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979))). However, "[u]nder the

9

[CMTD], a plaintiff's cause of action does not accrue until the tortious continuing treatment ends, even if the plaintiff is aware of the facts constituting negligence before that time." *Wehrman*, 830 F.2d at 1483. In effect, application of the CMTD delays accrual of the two-year statute of limitations for medical malpractice claims and gives plaintiffs additional time to present claims.

Further related to timing, a plaintiff may amend his or her administrative claim "at any time prior to final agency action or" any time prior to a claimant deeming the agency's failure to make final disposition of a claim within six months of filing as a final denial. 28 C.F.R. § 14.2(c). Within six months of the agency finally denying a claim in writing, a claimant may seek reconsideration by the federal agency or file an action in federal court. 28 C.F.R. § 14.9.

### B. Plaintiffs' First Administrative Claims

With this legal framework in mind, the Court turns to Plaintiff's first set of administrative claims and begins by examining the timeline of relevant events before discussing application of the law. Ordonez went to OneWorld complaining of abdominal pain on both October 19, 2015, and November 6, 2015. Filing 47 at 2. On November 7, 2015, Ordonez was taken by rescue squad from her home to Methodist Hospital where she was diagnosed with a bowel obstruction and underwent an emergency laparotomy surgery with bowel resection. Filing 47 at 3. After surgery, Ordonez returned to OneWorld for follow-up care on January 12, 2016, and June 20, 2017. Filing 47 at 3. On March 9, 2018, Plaintiffs submitted their first set of SF-95s to DHHS. Filing 35-1. Both SF-95s indicated the "date and day of accident" as November 17, 2015. *See* Filing 35-2 at 1, 3.

Because a tort claim "against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues," *McCoy*, 264 F.3d at 794 (quoting 28 U.S.C. § 2401(b)), Plaintiffs' administrative claims were not timely

10

presented unless the CMTD applies. Plaintiffs' SF-95s list the date and day of the accident as November 17, 2015. *See* Filing 35-2 at 1, 3. Plaintiffs did not file their first set of SF-95s until March 9, 2018, roughly twenty-eight months after the claimed date of the accident. Filing 35-1. However, Plaintiffs argue they properly presented the issue and evidence of continuing medical treatment, and that the CMTD applies to the facts of this case; thus, the additional treatment Ordonez received from OneWorld on June 20, 2017, delayed accrual of the statute of limitations until that date, and the March 9, 2018, SF-95s were filed within two years of accrual. *See* Filing 51 at 6-14. The United States responds that Plaintiffs' first set of SF-95s did not properly present evidence or the theory of continuing medical treatment, and even if they did, the CMTD does not apply to the facts of this case. Filing 55 at 3-10.

  The Court need not address whether the CMTD applies to this case because Plaintiffs failed to legally or factually present the issue of continuing or negligent medical treatment in their March 9, 2018, SF-95s. The purpose of presentment is to "provide[] federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit." *Mader*, 654 F.3d at 801. Therefore, "[a] litigant may not base any part of his tort action against the United States on claims that were not first presented to the proper administrative agency." *McCoy*, 264 F.3d at 795 (citing *Provancial*, 454 F.2d at 74–75).

  In *McCoy*, 264 F.3d at 793, plaintiff McCoy was a prisoner seeking medical treatment for lesions on his left foot. Treatment was unsuccessful, and McCoy developed gangrene in his left foot leading to amputation of his left leg. *Id.* After amputation, the stump failed to heal despite numerous skin grafts and other treatment. *Id.* McCoy's doctors suspected a particular disease was preventing proper healing, and cessation of smoking was the only known treatment for the

suspected disease. *Id.* However, McCoy's doctors failed to inform him of their suspicions and the potential solution. *Id.*

McCoy later filed an administrative claim with the Bureau of Prisons alleging malpractice that led to (1) amputation of his left leg and (2) ongoing issues with healing related to the amputation. *Id.* at 793–94. After the Bureau of Prisons denied his claim as untimely for being filed more than two years after amputation of his left leg, McCoy filed suit alleging negligent treatment leading to amputation of his left leg. *Id.*

McCoy's amputation claim was untimely unless the CMTD applied, so McCoy argued the CMTD applied and delayed accrual of his amputation claim because his doctors continued to treat him after the amputation surgery and failed to inform him that they suspected his smoking prevented the healing of his stump wound. *Id.* at 794–795. However, the court noted that "[a] litigant may not base any part of his tort action against the United States on claims that were not first presented to the proper administrative agency," and thus McCoy's "fail[ure] to raise an issue of continuing negligent medical treatment in his administrative claim" prevented application of the CMTD. *Id.* at 795. Because McCoy did not plead continuous negligent treatment, he [did] not toll[] the statute [of limitations]." *Id.* Accordingly, the Eighth Circuit affirmed the District Court's finding that "McCoy knew of his doctors' breach of duty 'as soon as the leg was amputated.'" *Id.* at 796.

Similar to McCoy, Plaintiffs (1) failed to timely file their surgery-based claims and (2) rely on different but related subsequent treatment to extend the accrual date of their claims. As the basis for their administrative claims, both Arriaga and Ordonez stated that "the negligence of the employees of [OneWorld]" caused Ordonez to suffer "undiagnosed intestinal blockage" and forced

12

her "to undergo life-saving repair surgery." Filing 35-2 at 1, 3. Like McCoy, Ordonez knew of her doctors' alleged breach of duty as soon as she underwent the surgery.

Despite their SF-95s not mentioning continuing treatment, later dates, or negligent opioid prescription, Plaintiffs argue they presented evidence of continuing negligent treatment because they submitted 1,376 pages of Ordonez's medical records and billing statements to DHHS along with their SF-95 forms. Filing 51 at 9-14. Those billing statements contained notes and bills from Ordonez's treatment at OneWorld on January 12, 2016, and June 20, 2017. Filing 52-1 at 2. However, Plaintiffs also submitted a copy of her state-court complaint and a contract for legal services. Filing 52-1 at 1-2. The state-court complaint alleged negligent medical treatment on October 19, 2015, and November 6, 2015, but did not specify any continued visits or any ongoing negligent prescription of opioids. *See* Filing 35-2 at 9-12. The contract for legal services showed Ordonez employed her attorney to represent her for her claim "arising out of medical malpractice on or about the 7 day of November, 2015." Filing 35-2 at 5.

The purpose of presentment is to "provide[] federal agencies a fair opportunity to meaningfully consider . . . FTCA claims prior to suit." *Mader*, 654 F.3d at 801. Plaintiffs' SF-95s did not describe facts showing ongoing treatment and did not provide DHHS "a fair opportunity to meaningfully consider" Plaintiffs' claims. *Id.*; *see also Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 722 (7th Cir. 2012) ("The administrative claim need not set forth a legal theory, but it must allege facts that would clue a legally trained reader to the theory's applicability."). A few subsequent dates of treatment and prescription notes buried within hundreds of pages of medical records are not sufficient to provide DHHS a fair opportunity to meaningfully consider if Plaintiffs' claims were insufficient such as would cause a legally trained reader to consider continuing treatment and negligence. This is particularly so when the SF-95s contained no facts or

allegations of continuing treatment, the SF-95s contained a single date of accident near the time of surgery, and other documentation (the state-court complaint and contract for legal services) advanced a theory of negligence based on the two treatment dates prior to the surgery.[7] *See* Filing 35-2 at 5, 9-12.

Accordingly, Plaintiffs' original SF-95s and supporting documentation failed to present facts of continuing treatment or continuing negligence. "Because [Plaintiffs] did not plead continuous negligent treatment, [they] ha[ve] not tolled the statute [of limitations]" with their March 9, 2018, SF-95 forms. *McCoy*, 264 F.3d at 795. Thus, this Court lacks subject-matter jurisdiction over Plaintiffs' first set of administrative claims.

### C. Plaintiffs' Second Administrative Claims[8]

The Court also lacks subject-matter jurisdiction over Plaintiffs' second set of administrative claims, regardless of whether the additional facts included in the second set of claims are (1) amendments, (2) requests for reconsideration, or (3) new claims or causes of action, because they are either untimely or this lawsuit was filed prematurely.

First, if Plaintiffs' later set of administrative claims are an attempt to amend their original administrative claims, this Court lacks subject-matter jurisdiction over the amendments because they are untimely. A plaintiff may amend his or her administrative claim "at any time prior to final agency action or" at any time prior to a claimant deeming the agency's failure to make final

---

[7] Indeed, when Plaintiffs previously requested that this Court stay proceedings in this case pending submission of Plaintiffs' second set of administrative claims, Plaintiffs noted that "[n]othing in [the March 9, 2018, administrative claims] alleged negligent conduct by the Defendant after the November 6th date." Filing 37 at 1. Plaintiffs further stated it was possible that "Defendant had not been put on notice of [Plaintiffs'] claim of negligent continuing medical treatment as required by the FTCA." Filing 37 at 1.

[8] The Court again notes that Plaintiffs declined to meaningfully address whether or not their second set of SF-95s were an attempt to amend their original claims. *See* Filing 51 at 5 ("Thus, in light of the [CMTD], the issue of whether Plaintiffs' second SF-95 forms were an attempt to amend Plaintiffs' original SF-95s is moot."); *see also* Filing 51 at 14-15 (stating Plaintiffs "did not file their second SF-95 forms in an attempt to 'amend' their previous SF-95 forms" but rather filed them out of an "abundance of caution").

14

disposition of a claim within six months of filing as a final denial. 28 C.F.R. § 14.2(c). The record is clear that DHHS received Plaintiffs' first set of administrative claims on March 9, 2018, and denied those claims on July 16, 2018. Filing 35-1. Plaintiffs' second set of administrative claims, sent to DHHS on April 5, 2019, are too late to amend because DHHS had already issued a final decision. Accordingly, if amendments, Plaintiffs' second set of administrative claims are untimely.

Second, if Plaintiffs' April 5, 2019, administrative claims request reconsideration, they are also untimely. Within six months of DHHS finally denying a claim in writing, a claimant may seek reconsideration by the federal agency. 28 C.F.R. § 14.9. On July 16, 2018, DHHS denied Plaintiffs' administrative claims. Filing 35-1 at 2. Thus, Plaintiffs' April 5, 2019, administrative claims are well outside of the six-month window to request reconsideration. Accordingly, if requesting reconsideration, Plaintiffs' second set of administrative claims are untimely.

Third and finally, if Plaintiffs' subsequent administrative submissions raise new claims or causes of action, then Plaintiffs failed to exhaust their administrative remedies and prematurely filed this suit. "An [FTCA] action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a). If the agency fails "to make final disposition of a claim within six months after it is filed," a claimant has the option to deem such failure a final denial. *Id.*

Plaintiffs instituted this FCTA action against the United States on August 24, 2018. *See* Filing 1. Well after filing this action, Plaintiffs sent their second set of SF-95s to DHHS on April 5, 2019, alleging continuing negligent medical treatment. Filing 34-3 at 2; Filing 34-4 at 2-3. To the extent Plaintiffs' second set of administrative claims and newly highlighted facts raise new claims or causes of action, the Court finds Plaintiffs filed this suit prior to presenting those new

15

claims to DHHS. Therefore, the Court applies the plain language requirements of 28 U.S.C. § 2675(a) and concludes that Plaintiffs failed to exhaust their administrative remedies prior to filing this action if their second set of administrative claims raise "an additional cause of action relating to continuing negligent medical treatment." Filing 34-3 at 1-2.

In summary, Plaintiffs' second administrative claims are too late to be successful amendments or requests for reconsideration. Further, to the extent the second set of SF-95s raise new claims, Plaintiffs filed suit prior to exhausting their administrative remedies and cannot now refile or amend their suit because any new claims are time-barred based on the treatment dates alleged.[9]

## V. CONCLUSION

Plaintiffs' first administrative claims failed to properly present continuing negligent treatment and are therefore time-barred. Plaintiffs' later administrative claims are untimely or this suit was filed prior to exhaustion of administrative remedies. For these reasons, the Court lacks subject-matter jurisdiction over Plaintiffs claims. Furthermore, Plaintiffs have not sought leave to amend, nor does the Court see how amendment could cure the deficiency in subject-matter jurisdiction noted herein. Accordingly, the Court grants the United States' Motion to Dismiss and Motion for Summary Judgment (Filing 48) and dismisses this action with prejudice.

IT IS ORDERED:

1. The United States' Motion to Dismiss and Motion for Summary Judgment (Filing 48) is granted;
2. Plaintiffs' Amended Complaint (Filing 47) is dismissed with prejudice;
3. The Court will enter a separate judgment.

---

[9] No statutory tolling appears applicable and Plaintiffs have not argued otherwise. Further, Plaintiffs are not entitled to equitable tolling given the lack of extraordinary circumstances.

Dated this 20th day of May, 2020.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

17